UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA MALLOY LEE,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | No. 2:18-cv-2777 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence and subjective testimony were erroneous.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 9 & 10.)

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

**PROCEDURAL BACKGROUND**

In May of 2015, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on May 9, 2014. (Transcript ("Tr.") at 15, 215-21.) Plaintiff's alleged impairments included anxiety, depression, back and knee pain. (Id. at 235.) Plaintiff's application was denied initially, (id. at 106-10), and upon reconsideration. (Id. at 117-22.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 25, 2017. (Id. at 34-70.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 35-36.) In a decision issued on December 12, 2017, the ALJ found that plaintiff was not disabled. (Id. at 27.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since May 9, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; bilateral carpal tunnel syndrome; degenerative joint disease of the left thumb; obesity; depression and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift and carry ten pounds frequently and 20 pounds occasionally. She is able to sit stand and/or walk for six to eight hours out of an eight-hour day. She is precluded from climbing ladders, ropes or scaffolds or working around unprotected heights and hazardous machinery. She is limited to occasional balancing, stooping and kneeling. She

////

2

is able to perform simple, repetitive tasks. She is limited to frequent gross manipulation. She is limited to no more than occasional in-person interaction with the public.

   6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

   7. The claimant was born [in] 1963 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

   8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

   9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

   11. The claimant has not been under a disability, as defined in the Social Security Act, from May 9, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 17-27.)

On August 13, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's December 12, 2017 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 15, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

////

////

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following two principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the

////

ALJ's treatment of the subjective testimony constituted error.  (Pl.'s MSJ (ECF No. 18) at 12-28.[3])

### I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]"  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

////

////

////

////

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

### A. Dr. Richard Palmer, Ph. D.

Plaintiff first challenges the ALJ's treatment of the opinion of Dr. Richard Palmer, Ph. D., a treating physician.[4] (Pl.'s MSJ (ECF No. 18) at 13-17.) The ALJ discussed Dr. Palmer's opinion, stating:

> Dr. Palmer has seen the claimant since 2014. In January 2016, he stated that the claimant experienced marked limitations in concentrating, persisting and maintaining pace as well as interacting with others; exhibited several episodes of decompensation and would need to miss more than four days each month due to her impairments and symptoms. Over the course of his treatment, he has assessed several GAF scores.[5] Dr. Palmer's opinions are given little weight because they are largely inconsistent with the evidence, including his own treatment notes commenting on her appropriate social interaction, coherent thoughts and improved mood and functioning after getting a dog. Despite the claimant's significantly improved symptoms, he routinely assessed low GAF scores and assessed severe limitations due to her impairments. The undersigned notes a letter stating that Dr. Palmer was not the claimant's authorized primary care physician.[6]

(Tr. at 25) (citations omitted).

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

---

[4] The opinions of medical specialists regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.").

[5] A Global Assessment of Functioning ("GAF") score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.").

[6] The import of the ALJ's acknowledgement that Dr. Palmer was not plaintiff's primary care physician is entirely unclear. Dr. Palmer was a psychologist, not a primary care doctor. Moreover, the evidence cited to is simply a letter from a law firm concerning a billing dispute complaining that Dr. Palmer was not an authorized provider in "Defendant's Medical Provider Network." (Tr. at 2639.)

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Moreover,

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).

Nonetheless, Dr. Palmer's opinion was consistent with his treatment notes. For example, on April 19, 2014, Dr. Palmer examined plaintiff and found "the content of her speech highly vague, disjointed, rambling, tangential, and often confused. She regularly lost the direction of what she was saying." (Tr. at 351.) Plaintiff "seemed puzzled and unclear about the purpose of the session." (Id.) Dr. Palmer administered the Patient Health Questionnaire (PHQ-9), Beck Anxiety Scale, Beck Depression Inventory-II (BDI-II), and Pain Catastrophizing Scale (PCS). (Id. at 352.) Plaintiff's scores indicated mild to moderate depression, mild anxiety, and clinically relevant levels of catastrophizing. (Id. at 352-53.) Dr. Palmer recommended plaintiff "undergo a more thorough psychological assessment to determine the etiology of [plaintiff's] obvious and major deficits[.]" (Id. at 354.)

On June 7, 2014, Dr. Palmer observed that plaintiff's "affect had fearful and discouraged quality with no sense of direction from this point." (Id. at 388.) On July 19, 2014, Dr. Palmer found that plaintiff "presents as anxious, eager to please but very insightless and confused about interpersonal relationships involved in the workplace," and that plaintiff "is an extremely anxious

woman who[] has some PTSD-like symptoms[.]" (Id. at 378.) On July 26, 2014, Dr. Palmer observed that plaintiff "presents as anxious, eager to please." (Id. at 374.)

After a September 6, 2014 session, Dr. Palmer opined that plaintiff "presents as anxious, eager to please but insightless and confused about interpersonal relationships involved in the workplace. The effects of previous traumatic events have produced pervasive and powerful anxiety that results in fears and her inability to cope with workplace situations that precipitate these anxieties." (Id. at 357.) On September 20, 2014, Dr. Palmer observed that plaintiff's "distress today was quite dramatically more serious than in recent sessions." (Id. at 417.) Plaintiff presented as "discouraged, hopeless, depressed and defeated." (Id. at 418.)

On October 4, 2014, Dr. Palmer found plaintiff's affect to be "sometimes hopeful and positive and other times anxious and obsessive." (Id. at 412.) On May 30, 2015, Dr. Palmer observed that plaintiff's "distress level remains very high today with severe depression and discouragement as well as frequent, moderate, tearfulness[.]" (Id. at 1933.) On June 20, 2015, Dr. Palmer found that plaintiff "had lapsed into a major emotional crisis with severe depression and suicidal ideation[.]" (Id. at 1920.) On July 11, 2015, Dr. Palmer found plaintiff's "depression was clearly worse than at any point since" treatment began. (Id. at 1916.)

Additionally, when an ALJ elects to afford the opinion of a treating physician less than controlling weight, the opinion must be "weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ's failure to discuss these factors "alone constitutes reversible legal error." (Id. at 676.) Here, not only did the ALJ fail to discuss these factors, but Dr. Palmer had seen plaintiff for 51 sessions prior to rendering the treating opinion. (Tr. at 2210.) And Dr. Palmer's treating opinion was quite thorough and supported. (Id. at 2210-16.)

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Palmer's opinion.

////

**B.     Dr. Paul Nkadi, M.D.**

Plaintiff also challenges the ALJ's treatment of the treating opinion offered by Dr. Paul Nkadi. (Pl.'s MSJ (ECF No. 18) at 18-20.) The ALJ discussed Dr. Nkadi's opinion, stating:

> In June 2016 Dr. Nkadi gave the claimant an initial comprehensive exam and reported largely insignificant musculoskeletal symptoms upon examination. In February 2017 he stated that she was limited to sedentary work with severely limited postural functioning and non-exertional limitations including missing four days each month due to impairment. His opinions are given little weight because they are inconsistent with the medical evidence showing mild physical symptoms including his own in-person examinations.

(Tr. at 25.)

As noted above, to reject a treating physician's opinion that has been contradicted, the ALJ must offer specific and legitimate reasons supported by substantial evidence. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). Here, the ALJ's vague and conclusory treatment of Dr. Nkadi's opinion does not approach the applicable standard.

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Nkadi's opinion. Plaintiff, therefore, is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

**II.     Subjective Testimony**

**A.     Plaintiff's Subjective Testimony**

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 18) at 21-26.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the

9

symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[7] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

////

---

[7] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo, 871 F.3d at 679 (quoting SSR 16-3p) (alterations omitted).

Here, the ALJ summarized plaintiff's testimony as follows:

> The bulk of the claimant's complaints relate to her inability to focus and difficulty lifting, squatting, bending, standing, walking, kneeling, talking, remembering, completing tasks, concentrating, understanding and following instructions, secondary to her anxiety disorder, depression, headaches, prior brain surgery and back and knee disorders. She testified that she can only walk 15 minutes; stand ten minutes; sit for 35 minutes; lift five pounds and has difficulty holding things in her hands (Hearing Testimony (HT)). She is unable to pay attention for long; has difficulty with spoken and written instructions and cannot handle stressful situations or changes in routine. She reported needing to use a cane to ambulate and having difficulty sitting in her seat at the hearing (HT). The claimant testified that her workers' compensation case is still pending. She further stated that, during the remainder of the day, she plays on the computer.

(Tr. at 21.)

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Id. at 22.) The ALJ then stated that, "these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Id.) In support of this determination, the ALJ relied on findings that the "medical evidence does not substantiate the existence of disabling physical impairments," and that the "objective medical evidence does not corroborate the claimant's allegations of depression and anxiety." (Id. at 22-23.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Lingenfelter, 504 F.3d at 1036 ("the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator

11

could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings."). Moreover, plaintiff's testimony is consistent with the medical evidence provided by the treating opinions of Drs. Palmer and Nkadi, discussed above.

The ALJ also relied on the finding that plaintiff's "daily activities" were "considerably less limited than one could reasonably expect" given plaintiff's testimony. (Tr. at 23.) In this regard, the ALJ referenced plaintiff's ability to make meals, groom, bathe, spend time with her mother, attend church, drive, etc. (Id.)

However,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014), 759 F.3d at 1016 (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

The ALJ also rejected plaintiff's testimony because plaintiff applied "for various jobs" and went on interviews. (Tr. at 23.) However, that plaintiff "sought employment suggests no more than that [plaintiff] was doing [the] utmost, in spite of [her] health, to support [herself]." Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005). Moreover, neither the ALJ nor the records cited in support by the ALJ address whether plaintiff was applying for full-time or part-time work. (Tr. at 23, 356, 403, 408, 1829.) Only searching for full-time work "is inconsistent with . .

////

12

. disability allegations." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

Accordingly, the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony.

### B. Lay Witness Testimony

Finally, plaintiff challenges the ALJ's treatment of the lay witness testimony. (Pl.'s MSJ (ECF No. 18) at 27-28.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ discussed the lay witness testimony as follows:

> Because a family member is not an acceptable medical source as defined by 20 CFR 404.1513 and SSR 06-03p the undersigned considered the opinion of Sheilor Robinson as that of an other source under the regulations. The undersigned has reviewed and given full

////

> consideration to her report however the lay opinions therein do not amount to evidence that would change the determinations made in this decision according to SSA regulations.

(Tr. at 25.)

The vague and conclusory assertion that the ALJ "reviewed" and gave "full consideration" to the lay witness testimony but found that it "did not amount to evidence that would change the determinations" made by the ALJ is a conclusion. It is not a germane reason for rejecting the lay witness testimony. See Stout, 454 F.3d at 1054 ("the ALJ . . . is required to provide specific reasons for rejecting lay testimony").

Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ's treatment of the lay witness testimony constituted error.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

1       Here, further administrative proceedings would serve no useful purpose as the record contains ample evidence, testimony, and medical opinion evidence. The ALJ failed to provide legally sufficient reasons for rejecting the opinions of two treating physicians, plaintiff's testimony, and the corresponding lay witness testimony. If the improperly discredited evidence were credited as true the ALJ would be required to find plaintiff disabled on remand, as evidenced by the VE's testimony. (Tr. at 68.) "Such a finding by the vocational expert is a sufficient basis upon which to remand for determination of benefits." <u>Wechel v. Berryhill</u>, 713 Fed. Appx. 559, 562 (9th Cir. 2017). Furthermore, the record as whole does not create serious doubt as to whether plaintiff is disabled. <u>See</u> <u>Moe v. Berryhill</u>, 731 Fed. Appx. 588, 592 (9th Cir. 2018) ("Remand for immediate award of benefits is appropriate in this case because all three factors of the credit-as-true rule are satisfied, leaving no 'serious doubt' as to Moe's disability.").

      Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 25) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the payment of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: March 24, 2020            /s/ DEBORAH BARNES
                                                      UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\lee2777.ord